IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOYCE D. GUNSAULIS                                                    PLAINTIFF

V.                                      NO. 11-5279

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Joyce D. Gunsaulis, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current application for DIB on July 21, 2008, alleging an inability to work since July 21, 2008, due to fibromyalgia and Graves disease.  (Tr. 141, 145). An administrative hearing was held on March 9, 2010, at which Plaintiff appeared with counsel and testified.  (Tr. 33-64).

By written decision dated June 22, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - fibromyalgia and mood disorder.  (Tr. 19).  However, after reviewing all of the evidence

-1-

presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of

severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P,

Regulation No. 4.  (Tr. 20).  The ALJ found Plaintiff retained the residual functional capacity

(RFC) to:

> lift and carry ten pounds occasionally and less than ten pounds frequently;
> sit for about six hours during an eight-hour workday; and stand and walk
> for at least two hours during an eight-hour workday.  The claimant can
> occasionally climb, balance, stoop, kneel, crouch, and crawl.
> Additionally, the claimant can understand, remember, and carry out
> simple, routine, and repetitive tasks; and respond appropriately to
> supervisors, co-workers, the general public and usual work situations.

(Tr. 21).  With the help of a vocational expert (VE), the ALJ determined that Plaintiff would be

unable to perform her past relevant work, but that there were other jobs that Plaintiff would be

able to perform - almond sorter; puller through; and weight inspector.  (Tr. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on November 9, 2011.  (Tr. 1-4).  Subsequently, Plaintiff filed this action.

(Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 5).

Both parties have filed appeal briefs, and the case is not ready for decision.  (Docs. 9, 14).

Plaintiff has also filed a Motion to Remand for Consideration of New and Material

Evidence.  (Doc. 10).  Defendant has incorporated a response to this motion in his appeal brief

and the Court will address it in this opinion as well. (Doc. 14).

The Court has reviewed the entire transcript.  The complete set of facts and arguments

are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8ᵗʰ Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8ᵗʰ Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8ᵗʰ Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8ᵗʰ Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8ᵗʰ Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial

AO72A
(Rev. 8/82)

gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.    Discussion:

Plaintiff raises the following issues on appeal and in her Motion to Remand: 1) Whether the ALJ properly evaluated the severity of Plaintiff's major depression, single episode severe with mood congruent psychosis, a panic disorder without agoraphobia, features of post traumatic stress disorder (PTSD) and a dependent personality disorder in assessing Plaintiff's mental RFC; 2) Whether the ALJ properly evaluated Plaintiff's credibility; 3) whether the Appeals Council properly declined review of the case in view of Plaintiff's subsequent approval for disability benefits following the ALJ's unfavorable decision.

### A.    Plaintiff's Mental RFC:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of  her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from

-4-

symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In discussing Plaintiff's mental impairments, the ALJ found that: in activities of daily living, Plaintiff had mild restriction; in social functioning, Plaintiff had moderate difficulties; in concentration, persistence or pace, Plaintiff had moderate difficulties; and Plaintiff had experienced no episodes of decompensation, which have been of extended duration. (Tr. 20). As Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the ALJ found that Plaintiff's mental impairments did not satisfy "paragraph B" criteria. (Tr. 20).

Plaintiff was treated at Ozark Guidance Center (OGC) in 2004, 2005, and part of 2006. In the last record from OGC, Plaintiff was given the following final assessment:

> Current GAF - 50 last contact
> Prognosis - fair
> Intake assessment and diagnosis:
>     Anxiety DSO, NOS
>     Depression DSO NOS

(Tr. 395).

On October 30, 2006, Dr. Robert B. Wilson, Jr. reported that Plaintiff stated she had symptoms of anxiety for a long time and took Xanax in the past. He diagnosed her with anxiety

-5-

syndrome (tense or nervous) and tobacco dependency (nicotine addiction).  He suggested tobacco cessation, and increased water intake and exercise.  (Tr. 252).  On March 7, 2008, Dr. Wilson reported that Plaintiff was depressed and anxious and had not done well on various antidepressants, and assessed her with fibromyalgia (multiple tender and tense muscle groups); Graves disease; anxiety syndrome (tense or nervous); depression; and tobacco dependency (nicotine addiction).  (Tr. 246-247).

On April 8, 2008, Dr. Robert Wilson, III, reported that Plaintiff started Cymbalta and Lyrica a month previously, and that she was feeling much better.  She had not noticed any side effects of the medications, and reported that this was the best she had felt in years.  (Tr. 245).  Dr. Wilson then assessed her as follows:

> Fibromyalgia (multiple tender and tense muscle groups)
> Anxiety syndrome (tense of nervous)
> Depression

(Tr. 245).

On June 10, 2008, Plaintiff reported to Dr. Robert Wilson, III that she quit Cymbalta three weeks prior because she thought she could, because she was doing well. (Tr. 242).  Dr. Wilson recommended she get back on the Cymbalta.  (Tr. 242).

On August 6, 2008, Plaintiff presented herself to Dr. Ronald Bertram, who had been her treating physician, and asked Dr. Bertram to write letters stating that she couldn't work from the 22nd on for work disability, but also wanted him to write a separate one for a car loan, stating that she was working after the 22nd until the 29th because she bought a car on the 26th. (Tr. 230).  Dr. Bertram noted that this was asking him to participate in fraud, Plaintiff had violated their relationship, and he dismissed Plaintiff as a patient. (Tr. 230).

-6-

On November 2, 2008, Plaintiff went to the Emergency Room of the Washington Regional Medical Center, unable to talk, with neck pain and numbness and extreme weakness. (Tr. 330). When Plaintiff was offered treatment for a stroke, suddenly she could move all extremities and talk. (Tr. 332). Plaintiff was diagnosed with "conversion disorder, additional: dental pain." (Tr. 332).

On April 21, 2010, Dr. Richard Back, of Northwest Arkansas Psychological Group, conducted a Mental Diagnostic Evaluation. (Tr. 447-455). Dr. Back reported that one month previously, Plaintiff moved in with her new boyfriend that she met at a dance. (Tr. 449). Dr. Back reported that Plaintiff drove, shopped on a weekly basis, handled her personal finances, vacuumed, swept, cooked meals, did the laundry, and showered daily. (Tr. 450). She also reported that she was currently performing part-time work of 14 hours a week for Home Health, taking care of her mother. (Tr. 450). Dr. Back diagnosed Plaintiff as follows:

> Axis I:   Major Depression, Single Episode, Severe with Mood
>           Congruent Psychosis
>           Panic Disorder without Agoraphobia
>           Features of PTSD
> Axis II:  R/O Dependent Personality Disorder
> Axis V:   45-55

(Tr. 453). Dr. Back found that Plaintiff's mental impairments interfered with her day to day adaptive functioning to a moderate extent; that her capacity to communicate and interact in a socially adequate manner was markedly impaired; that her capacity to cope with typical mental/cognitive demands of basic work-like tasks was mildly impaired; that her ability to attend ans sustain concentration on basic tasks was markedly impaired; that her capacity to sustain persistence in completing tasks was moderately impaired; that her capacity to complete work-like

-7-

tasks within an acceptable time frame was moderately impaired; and that she was not able to manage funds without assistance.  (Tr. 453-454).

As noted by Defendant, it is significant that Plaintiff's own treating physician rejected her claims of restriction.  Masterson v. Barnhart, 363 F.3d 731, 739 (8th Cir. 2004).  In addition, Plaintiff's presentation during the period she sought disability benefits was inconsistent with her claim of disability as well as suggestive of overt manipulation, and weighs against her claim of disability.  See Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).  In addition, the fact that on November 2, 2008, when the hospital suggested Plaintiff be treated for stroke, Plaintiff quickly became able to talk and move all extremities, calls into question Plaintiff's credibility and her claims of both mental and physical symptoms.

The ALJ acknowledged Dr. Back's finding of marked impairment on concentration/attention tasks.  (Tr. 23).  However, he also noted that Plaintiff was seen by Dr. Back only once, and he did not have the benefit of access to all of her records.  Therefore, the ALJ gave his opinion some weight , but based on all the other evidence of record, the ALJ found Plaintiff was capable of unskilled work, as described in his RFC assessment.  (Tr. 23).

The ALJ determined Plaintiff's mental RFC finding in a manner that is consistent with his 20 C.F.R. § 404.1520a analysis, because a moderate limitation indicates that the individual can still function satisfactorily in that area.  As noted by Defendant, a severity analysis merely indicates the individual has surpassed an initial de minimis evaluation that requires the impairment be further considered, not that it necessarily imposes significant limitations.

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's mental RFC assessment.

AO72A
(Rev. 8/82)

**B. Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 23). Although non-examining consultant Dr. David L. Hicks concluded in his Physical RFC Assessment (completed on August 22, 2008) that Plaintiff was capable of performing light work with certain limitations (Tr. 272), the ALJ, after considering all of the evidence, found that Plaintiff would be unable to perform work any greater than at the unskilled sedentary level. (Tr. 23). The ALJ observed that on April 1, 2010, Dr. Tad Morgan conducted a General Physical Examination, and found that the limitations he assessed did not preclude work at the sedentary level. (Tr. 23). In his examination report, Dr. Morgan noted that: Plaintiff smoked 3/4 packs of cigarettes per day and had for 20 years; everything was within normal limits; and Plaintiff had a mild limitation to walk, stand, lift, or carry. (Tr. 442-

-9-

AO72A
(Rev. 8/82)

446).

With respect to daily activities, the ALJ noted that Plaintiff was able to take care of her personal needs, cook, perform household chores, drive, and shop. (Tr. 20). In his Mental Diagnostic Evaluation, Dr. Back reported that Plaintiff moved in with her new boyfriend, handled her personal finances, vacuumed regularly, swept, did the dishes, laundry, and showered daily. (Tr. 450). Although Dr. Back found that Plaintiff's capacity to communicate and interact in a socially adequate manner was markedly impaired, it is noteworthy that she reported to Dr. Back that she met her boyfriend when she "went dancing." (Tr. 450, 453).

The Court finds that there is substantial evidence to support the ALJ's credibility findings, and that the ALJ's RFC took into consideration all of the limitations which were supported by the record.

## C.     Plaintiff's Subsequent Approval for Disability Benefits:

Plaintiff contends it is unclear if the Appeals Council reviewed the subsequent allowance of benefits since it did not appear to be a part of the record. However, in the Notice of Appeals Council Action, dated November 9, 2011, the Appeals Council stated:

> Also, the Appeals Council considered the fact that since the date of the Administrative Law Judge's decision, you were found to be under a disability beginning June 23, 2010, based on the application(s) you filed on August 4, 2010; however, the Council found that this information does not warrant a change in the Administrative Law Judge's decision.

(Tr. 2). As stated by Defendant, a contrary decision following the June 22, 2010 decision does not deprive the ALJ's decision of presumptive validity based upon his well reasoned review of the evidence. In addition, the additional evidence Plaintiff references is simply a further explanation by Dr. Back of his findings given in his Mental Diagnostic Evaluation, which the

AO72A
(Rev. 8/82)

Court discussed earlier in this opinion, and which would not warrant a change in the ALJ's decision.

**IV.   Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is affirmed.   The Court further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 30th day of October, 2012.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-11-